IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LAURIE WOLF; DOLORES BERMAN; I-SHUN CHOW KIMCHI CHOW; GRASSHILL LAND, INC.; BRADY HEATH; THERESA HEATH; STEVEN A. NEWELL; MARILYN CADREAU NEWELL; TAMSCO PROPERTIES, LLC; JKR LASER INVESTMENT, LLC; SURFER BEACH, LLC; and TO BE DETERMINED, LLC, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | 2:09-CV-03086-GEB-EFB |
| v. | ) ) ) | ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING ARBITRATION |
| LORAL LANGEMEIER and LIVE OUT LOUD, INC., | ) ) ) | |
| Defendants. | ) ) | |

Defendants Loral Langemeier ("Langemeier") and Live Out Loud, Inc. ("LOL") (collectively, "Defendants") filed two pending motions: a motion to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) and a motion to stay this action pending arbitration under 9 U.S.C. § 3. For the following reasons, the motion to dismiss is denied and the motion to stay is granted.

## I.  PLAINTIFFS' ALLEGATIONS AND CLAIMS

Plaintiffs are eight individuals, one corporation, and four limited liability companies that attended various "investment education" events, known as "Big Table programs," at the Embassy Suites Hotel in South Lake Tahoe, California in April, May, August, and September 2006, and in January 2007. (Compl. ¶¶ 5-15.)

Defendants marketed these programs, at which they encouraged
Plaintiffs to "invest in various real estate ventures and other
investment opportunities." (Id. ¶¶ 18-19.)  Plaintiffs allege
Defendants made several "misrepresentations" when they promoted these
"high risk and not safe" investments "in pursuit of their own
pecuniary interests." (Id. ¶¶ 20, 23.)  Each Plaintiff alleges a lost
of tens or hundreds of thousands of dollars as a result of the
investments they made following the Big Table programs. (Id. ¶¶ 29,
49, 77, 105, 123.)

Plaintiffs allege the following claims in their complaint:
(1) fraud and deceit; (2) aiding and abetting fraud; (3) breach of
California Civil Code § 3373; (4) breach of fiduciary duty; (5)
violation of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5; (6)
violation of California Corporation Code § 25401; (7) assisting in the
violation of California Corporation Code § 25401; (8) violation of
California Corporation Code § 25110; (9) assisting in the violation of
California Corporation Code § 25110; and (10) violation of California
Business and Professions Code §§ 17200, et seq.  (Compl. ¶¶ 21-302.)

## II.  LEGAL STANDARD

### A.  Motion to Dismiss

A Rule 12(b)(6) motion "challenges a complaint's compliance
with . . . pleading requirements." Champlaie v. BAC Home Loans
Servicing, LP, 2009 WL 3429622, at *1 (E.D. Cal. 2009).  A pleading
must contain "a short and plain statement of the claim showing that
the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).
The complaint must "give the defendant fair notice of what the
[plaintiff's] claim is and the grounds upon which relief rests
. . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  To

avoid dismissal, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 547.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949.  When the court evaluates a dismissal motion under Rule 12(b)(6), it "accept[s] as true all facts alleged in the complaint, and draw[s] all reasonable inferences in favor of the plaintiff." <u>Al-Kidd v. Ashcroft</u>, 580 F.3d 949, 956 (9th Cir. 2009).

### B.  Motion to Stay

Defendants motion to stay this action concerns Section 3 of the Federal Arbitration Act which prescribes:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  "In deciding a motion to stay a proceeding pending arbitration, a court must determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" <u>McLeod v. Ford Motor Co.</u>, 2005 WL 3763354, at *2 (C.D. Cal.) (quoting <u>Chiron Corp. v. Ortho Diagnostic Sys., Inc.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000), and citing <u>Wagner v. Stratton Oakmont, Inc.</u>, 83 F.3d 1046, 1048-49 (9th Cir. 1996)).

//

### III.   DISCUSSION

#### A.   Motion to Dismiss

Defendants argue Plaintiffs' complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(2) since "personal jurisdiction is lacking because Plaintiffs' claims are subject to arbitration." (Defs.' Mot. to Dismiss 4:13-14.)  However, Defendants provide no authority supporting this argument.

Defendants also argue Plaintiffs' claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) "because the allegations in their complaint contradict . . . documents." (Defs.' Mot. to Dismiss 5:10-12.)  However, Defendants fail to identify which documents are contradicted, and disregard the general rule that when ruling on a dismissal motion "facts that are not alleged on the face of the complaint or contained in documents attached to the complaint" are disregarded.  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).  Therefore, Defendants' dismissal motion is denied.

#### B.   Motion to Stay

Defendants also seek "an order staying the instant matter pending arbitration." (Defs.' Mot. to Stay 2:15-16.)  Defendants argue "Plaintiffs agreed to arbitrate any dispute arising from or related to the Big Table programs." (Id. 5:16-17.)  Defendants rely on arbitration clauses in the following agreements as support for their position: five Coaching Resource, Inc. Big Table Agreements ("Big Table Agreements"), signed by Plaintiffs Laurie Wolf, Delores Berman, Kimchi Chow, Steven A. Newell, and Marilyn Cadreau Newell, and six Big Table Alumni Agreements ("Alumni Agreements"), signed by Plaintiffs Laurie Wolf, Kimchi Chow, Steven A. Newell, Marilyn Cadreau

Newell, Brady Heath, and Theresa Heath.  (Benoff Decl. Ex. 1, Ex. A at 23-32.)  Each Agreement contains the following arbitration provision:

> **Arbitration**
> Any dispute or claim arising or related to this Agreement, its performance, breach, or interpretation (including issues about its validity or enforceability), shall be exclusively (except as provided below) resolved by final binding arbitration before the American Arbitration Association (AAA), utilizing its Commercial Arbitration Rules.  One arbitrator shall use all reasonable efforts to minimize discovery and to complete the arbitration proceedings as expeditiously as possible.  The Arbitrator shall render a written decision within thirty (30) calendar days of the hearing.  The arbitrator will not award attorney's fees, or punitive, incidental, consequential, treble or other multiple or exemplary damages, and the parties hereby agree to waive and not seek such damages.  Either party may seek judicial relief to compel the other party to comply with the provisions of this Section, or injunctive or other equitable relief to protect its intellectual property rights, provided (unless prohibited by applicable law) that the remainder of the dispute or claim is submitted to arbitration. The arbitration shall be held in Marin County, California; both parties hereby give their irrevocable consent to jurisdiction of courts of or in the State of California, as well as processes of the AAA in California.  Awards shall be final, binding and non-appealable (except on the minimal grounds required under the Federal Arbitration Act or other applicable law).  All awards may be filed with one or more courts, state, federal or foreign having jurisdiction over the party against whom such award is rendered or its property, as a basis of judgment and of the issuance of execution for its collection.

Plaintiffs argue the six Alumni Agreements are not pertinent to Defendants' motion because the Alumni Program "is a different event than the Big Table [program]" and "[t]here are no allegations in the complaint concerning the Alumni Program."  (Plts.' Opp'n to Mot. to Stay 2:26-28.)  Defendants do not respond to this argument in their reply brief.  However, the following averment in Langemeier's declaration supports Plaintiffs' argument that the Alumni Agreements

are unrelated to the Big Table programs: "Participants who have graduated from the Big Table programs are eligible to attend additional educational seminars called 'Alumni' programs.  Every participant in the Big Table Alumni programs signs a Big Table Alumni Agreement."  (Langemeier Decl. ¶ 5.)  Further, allegations in Plaintiffs' complaint allege claims arising out of Big Table programs Plaintiffs attended in 2006 and January 2007; however, the dates of each of the six signatures on the Alumni Agreements are May, August, and September 2007.  Defendants have failed to show how these Alumni Agreements, signed several months after Plaintiffs attended the Big Table programs, "encompass[] the dispute at issue."  McLeod, 2005 WL 3763354 at *2.

Plaintiffs do not dispute, however, that the Big Table Agreements, if valid, would encompass each contracting Plaintiff's claim.  Rather, Plaintiffs argue that (1) Defendants do not have standing to enforce the Big Table Agreements, and (2) the agreements to arbitrate in the Big Table Agreements are unconscionable.

**1.  Standing**

Plaintiffs argue Defendants cannot enforce the arbitration agreements in the Big Table Agreements because it was Coaching Resource, Inc. ("CRI"), and not LOL or Langemeier, that was a party to the Big Table Agreements.  (Plts.' Opp'n to Mot. to Stay 4:5.)  Defendants counter LOL can enforce the agreements to arbitrate as the successor in interest to CRI, and that Langemeier can enforce the agreements as the agent of both CRI and LOL.  Defendants have presented two sets of Big Table Agreements.  The agreements in the second set, which are attached to Defendants' reply brief, are signed by Loral Langemeier on behalf of CRI, while the agreements in the

first set, which are attached to Defendants' motion to stay, are
unsigned.  Plaintiffs object to Defendants' submission of exhibits
with their reply brief.  (Plts.' Supplemental Brief 6:24-7:5.)
However, Plaintiffs' objection is overruled in light of Plaintiffs'
failure to show in their supplemental brief why this evidence should
be excluded.

      "Nonsignatory successors and alleged alter egos are entitled
to compel arbitration under clauses signed by the corporations whose
liabilities they are alleged to have assumed."  Prograph Inter. Inc.
v. Barhyde, 928 F. Supp. 983, 991 (N.D. Cal. 1996) (citing Pritzer v.
Merill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121-22 (3d
Cir. 1993)).  Further, nonsignatories may bind signatories under
"ordinary contract and agency principles."  Comer v. Micor, Inc., 436
F.3d 1098, 1101 (9th Cir. 2006).  "[A] willing non-signatory seeking
to arbitrate with a signatory that is unwilling may do so under what
has been called an 'alternate estoppel theory,' which takes into
consideration the relationship of the persons, wrongs, and issues."
Merill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 130 (2d
Cir. 2003); see also Brown v. General Steel Domestic Sales, LLC, 2008
WL 2128057, at *6-*7 (C.D. Cal. 2008) (compiling cases for this
"agency principle").

      Here, all of Plaintiffs' claims arise out of the alleged
misrepresentations made by Langemeier on behalf of LOL at the Big
Table programs.  The uncontroverted evidence shows that CRI operated
the Big Table programs in 2006 and January 2007, and that LOL assumed
all of CRI's assets and liabilities related to the Big Table programs
on January 3, 2008.  (Langemeier Decl. ¶ 6; Supplemental Decl. of
Langemeier Ex. 3, "Unanimous Written Consent" of Directors of LOL

accepting assets and liabilities, *and* "Unanimous Written Consent" of
Directors of CRI transferring liabilities; <u>see also</u> <u>id.</u> ¶ 3
(Langemeier declaring "CRI transferred all of its assets and liability
related to the Big Table programs to LOL [and] LOL accepted these
assets and liabilities").)   The uncontroverted evidence also shows
Langemeier is a "shareholder and [an] officer of [LOL], and was a
shareholder and officer of its predecessor [CRI]." (Supplemental
Decl. of Langemeier ¶ 1.)   It is in this capacity Plaintiffs allege
Langemeier made the fraudulent statements on which their claims are
based.   (Compl. ¶¶ 16-17 ("LOL is a mere shell corporation and alter
ego of Langemeier.").)   Accordingly, LOL is entitled to enforce the
arbitration agreements as CRI's successor in interest and Langemeier
is entitled to enforce the arbitration agreements as an agent of both
LOL and CRI.

**2.   Unconscionability**

Plaintiffs argue the "the Big Table Arbitration Agreements
are not valid because they are unconscionable under California Law."
(Plts.' Opp'n to Mot. to Stay 13:26-27.)   Defendants rejoin
"Plaintiffs have not met their burden of proving both procedural and
[substantive] unconscionability."   (Reply 6:13-14.)

Under the Federal Arbitration Act, a written arbitration
provision is valid and enforceable "save upon such grounds as exist at
law or in equity for the revocation of any contract."   9 U.S.C. § 2.
"Generally applicable contract defenses, such as unconscionability,
may render an arbitration provision unenforceable.   Whether an
arbitration provision is unconscionable is governed by state contract
law."   <u>Omstead v. Dell, Inc.</u>, 594 F.3d 1081, 1086 (9th Cir. 2010)

(citation omitted).  Here, the parties agree California contract law governs the Big Table Agreements.

> Under California law, an arbitration agreement . . . is unenforceable if it is both procedurally and substantively unconscionable.  California courts apply a "sliding scale" analysis in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.  Thus, although both procedural and substantive unconscionability must be present for the contract to be declared unenforceable, they need not be present to the same degree.

Pokorney v. Quixtar, Inc., 601 F.3d 987, 996 (9th Cir. 2010) (internal citations and quotations omitted).  "[T]he party opposing arbitration has the burden of proving the arbitration provision is unconscionable."  Sullivan v. Lumber Liquidators, Inc., 2010 WL 2231781, *3 (N.D. Cal. 2010); Engalla v. Permanente Med. Grp., Inc., 15 Cal. 4th 951, 972 (1997) ("a party opposing the petition [to arbitrate] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense").

   a.   **Procedural Unconscionability**

   "Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at the time.  It focuses on factors of oppression and surprise . . . .  [The court is to] commence [its] procedural unconscionability analysis by determining whether the [agreements] were contracts of adhesion.  A contract of adhesion is a standardized contract, which, imposed and drafted by the party of a superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."  Parada v. Superior Court, 176 Cal. App. 4th 1554, 1570 (2009) (internal citations and quotations omitted).  Here, the parties

do not dispute that the agreements to arbitrate were contained in standardized forms drafted by Defendants, and that Defendants were the parties of superior bargaining strength, which gave Plaintiffs the option of signing the contracts or rejecting them, in which case Plaintiffs could not attend the Big Table programs.  Therefore, the arbitration agreements are contracts of adhesion.  However, "[t]he take-it-or-leave-it nature of [the] agreement[s] is insufficient to render [them] unenforceable."  Chalk v. T-Mobile USA, Inc., 560 F.3d 1087, 1094 (9th Cir. 2009).  "A procedural unconscionability analysis also includes consideration of the factors of surprise and oppression."  Parada, 176 Cal. App. 4th at 1571 (internal citations and quotations omitted).

Plaintiffs argue the arbitration agreements were oppressive because Plaintiffs had already made over-the-phone credit card payments for the Big Table programs before they were provided with the Big Table Agreements, and therefore Plaintiffs were not given an opportunity to negotiate the terms of the arbitration agreements. Defendants counter the arbitration agreements were not oppressive because Plaintiffs never attempted to negotiate the terms of the agreements, and "[i]n choosing to receive coaching and education at the Big Table, Plaintiffs decided to forego a number of alternative sources of education."  (Reply 9:18-26.)

> Oppression refers not only to an absence of power to negotiate the terms of a contract, but also to the absence of reasonable market alternatives.  In many cases of adhesion contracts, the weaker party lacks not only the opportunity to bargain but also any realistic opportunity to look elsewhere for a more favorable contract; he must either adhere to the standardized agreement or forego the needed service.  Conversely, the oppression factor of the procedural element of unconscionability may be defeated, if the complaining party has a meaningful

> choice of reasonably available alternative sources of supply from which to obtain the desired goods and services free of the terms claimed to be unconscionable.

Parada, 176 Cal. App. 4th at 1572 (internal citations and quotations omitted).  Here, the Big Table Agreements expressly provide Plaintiffs with the opportunity to receive a refund of their Big Table program tuition prior to the second day of the program.  Plaintiffs have not shown that they attempted to negotiate the terms of the arbitration agreements before signing the Big Table Agreements, or that they attempted to obtain a reimbursement of their tuition.  Further, Plaintiffs have not shown they did not have "many reasonable and realistic market alternatives" to attending the Big Table programs, including choosing not to attend investment education events at all. Id. (finding no oppression when Plaintiffs could have invested in precious metals through other vendors or chosen not to invest in precious metals at all); Monex Deposit Co. v. Gilliam, 671 F. Supp. 2d 1137, 1149 (C.D. Cal. 2009) (same).  "This is not a situation such as admittance to a hospital or employment, in which an adhesion contract might be oppressive despite the availability of alternatives." Parada, 176 Cal. App. 4th at 1572.  Therefore, Plaintiffs have failed to meet their burden of showing the arbitration agreements were oppressive.

Plaintiffs argue the arbitration agreements were a surprise because they were in the same "type setting" as the other terms in the contract. (Plts.' Opp'n to Mot. to Stay 16:21-22.)  However, Plaintiffs have not shown how the arbitration agreements were a surprise since the "arbitration provisions [are] not hidden, but [are] in the same typeface and font as the rest of the [two-page Big Table

Agreement] and [have] bold headings accurately describing the substance of each paragraph." <u>Monex</u>, 671 F. Supp. 2d at 1144 (finding no surprise under these circumstances); <u>Parada</u>, 176 Cal. App. 4th at 1571 (same).  Plaintiffs also argue the arbitration agreements were a surprise because Plaintiffs were not informed about the American Arbitration Association cost structure or provided a fee schedule. (Plts.' Opp'n 15:22-17:21.)  However, "[P]laintiff[s] have not shown that the American Arbitration Association rules, referenced in the arbitration agreement, contain provisions that are unfair or inequitable.  The mere fact that the arbitration agreement incorporates another document by reference does not constitute procedural unconscionability." <u>Sullenberger v. Titan Health Corp.</u>, 2009 WL 1444210, at *8 (E.D. Cal. 2009).  Therefore, Plaintiffs have not met their burden of showing procedural unconscionability.

### b. Substantive Unconscionability

Substantive unconscionability "focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience." <u>Soltani v. W. & S. Life Ins. Co.</u>, 258 F.3d 1038, 1043 (9th Cir. 2001).  "The focus of the inquiry is whether the term is one-sided and will have an overly harsh effect on the disadvantaged party.  Thus, mutuality is the 'paramount' consideration when assessing substantive unconscionability.  Agreements to arbitrate must contain at least a modicum of bilaterality to avoid unconscionability." <u>Pokorny</u>, 601 F.3d at 997-98.

Plaintiffs argue the arbitration agreements are substantively unconscionable because they "strip away" "litigation rights" such as trial by jury and the availability of full discovery, punitive damages, incidental damages, and attorneys fees. (Plts.'

Opp'n to Mot. to Stay 18:1-9.)  Defendants counter Plaintiffs have not
provided evidence that the limitations on discovery and damages are
unconscionable.  (Reply 11:21-12:20.)  Plaintiffs have failed to cite
authority supporting their argument that these limitations in the
context of an investment education agreement "shock the conscience or
[are] unfairly one-sided." <u>Monex</u>, 671 F. Supp. 2d at 1147 (rejecting
plaintiff's argument that limitation on damages was substantively
unconscionable in context of an investor agreement and distinguishing
cases involving employment agreements); <u>see also</u> <u>Borden Inc. v. Advent</u>
<u>Ink Co.</u>, 701 A.2d 255, 264 (Pa. Sup. Ct. 1997) ("In commercial
settings, a limitation on damages clause will rarely be found
unconscionable.").  Nor have Plaintiffs shown how the discovery
provision "will prove insufficient to allow [Plaintiffs] a fair
opportunity to present their claims." <u>Gilmer v. Interstate/Johnson</u>
<u>Lane Corp.</u>, 500 U.S. 20, 31 (1991) (rejecting challenge to limitation
on discovery in an arbitration agreement); <u>see also</u> <u>Coast Plaza</u>
<u>Doctors Hosp. v. Blue Cross of Cal.</u>, 83 Cal. App. 4th 677, 689-90
(2000) ("The fact that an arbitration may limit a party's discovery
rights is not 'substantive unconscionability.'  If it were, every
arbitration clause would be subject to an unconscionability challenge
on that ground.").

        Plaintiffs also argue the arbitration agreements are
substantively unconscionable because they are "silen[t] regarding
potentially significant arbitration costs" and Plaintiffs' inability
to pay those costs prevents Plaintiffs from vindicating their
statutory rights that "affect the public interest." (Plts.' Opp'n to
Mot. to Stay 18:27-19:23.)  Defendants counter "Plaintiffs have
offered no evidence to show that the fees are unconscionable in the

specific context of this case." (Reply 13:15-17.) Each Plaintiff
avers lack of resources to afford arbitration, which could cost
"$7,750 and anywhere from $300 to $500 an hour." However, Plaintiffs
have not shown how the potential costs of arbitration are higher than
the costs of litigating their case in federal court. Nor have
Plaintiffs presented evidence of their net worth or monthly expenses;
rather, they refer only to their monthly and annual incomes. Further,
"unconscionability is determined as of the time the contract was
entered into, not in light of subsequent events." Morris v. Redwood
Empire Bancorp., 128 Cal. App. 4th 1305, 1324 (2005). Therefore,
Plaintiffs have failed to show that the terms of the arbitration
agreements "are so one-sided as to shock the conscience." Soltani,
258 F.3d at 1043.

Since Plaintiffs have failed to show that the arbitration
agreements -- which Plaintiffs concede, if valid, encompass the
contracting Plaintiffs' claims -- are either procedurally or
substantively unconscionable, Defendants' motion to stay will be
granted.

**3.  Scope of the Stay**

Defendants argue the entire action should be stayed since
arbitration will likely involve the "resolution of common issues" and
"failing to stay the [entire] action could lead to inconsistent
rulings." (Reply 14:5-17.)  Plaintiffs argue "[o]nly five of the
thirteen plaintiffs entered into contracts for the Big Table that
contains[] the arbitration clause at issue." (Plts.' Opp'n to Mot. to
Stay 2:13-14.)

"Where some portions of an action are arbitrable and others
are not, the decision to stay those claims not subject to arbitration

is in the court's discretion."  <u>McLeod</u>, 2005 WL 376334 at *2; <u>see also</u>
<u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 20
n.22 (1983) ("In some cases, of course, it may be advisable to stay
litigation among the non-arbitrating parties pending the outcome of
the arbitration.  That decision is one left to the district court
. . . as a matter of its discretion to control its docket."); <u>see also</u>
<u>United States v. Neumann Caribbean Int'l, Ltd.</u>, 750 F.2d 1422, 1427
(9th Cir. 1985) (staying all proceedings in case, including non-
arbitrable third party complaint, pending arbitration for reasons of
"economy and efficiency").  "In deciding whether to stay non-
arbitrable claims, a court considers economy and efficiency, the
similarity of the issues of law and fact to those that will be
considered during arbitration, and the potential for inconsistent
findings absent a stay."  <u>McLeod</u>, 2005 WL 3763354 at *2 (internal
citations, quotations, brackets, and ellipses omitted).

Here, Defendants have shown that the Big Table Agreements
were signed by Plaintiffs Laurie Wolf, Delores Berman, Kimchi Chow,
Steven A. Newell, and Marilyn Cadreau Newell.  Defendants have not
shown that Plaintiff I-Sun Chow (Plaintiffs collectively refer to the
"Chows" in their complaint and allege that the Chows attended Big
Table programs together) signed the agreements.  (Compl. ¶ 7.)
Further, Plaintiffs allege Grasshill is a corporation with "Chow" as
its "only shareholder, director, and officer." (<u>Id.</u> ¶ 8.)  Similarly,
Plaintiffs allege Tamsco is a limited liability company with "Newell"
as its "only member and manager." (<u>Id.</u> ¶ 12.)  The remaining
Plaintiffs -- Theresa Heath, Brady Heath, JKR, Surfer Beach, and TBD
-- all allege the same claims as the contracting Plaintiffs, against
the same Defendants, all allegedly arising out of investments made

following advice obtained from the Big Table programs in 2006 and January 2007.  In light of the similarity of the issues of law and fact among each Plaintiff's claim and the possibility of inconsistent rulings if the entire action is not stayed, the interests of economy and efficiency favor staying this entire action.

## IV.   CONCLUSION

For the stated reasons, Defendants' motion to dismiss (Docket No. 8) is denied and Defendants' motion to stay (Docket No. 9) is granted.  This action is stayed under 9 U.S.C. § 3 pending arbitration of Plaintiffs Laurie Wolf, Delores Berman, Kimchi Chow, Steven A. Newell, and Marilyn Cadreau Newell's claims in accordance with the terms of the Big Table Agreements.  Further, the status conference currently scheduled for October 4, 2010, is continued to commence at 9:00 a.m. on March 14, 2011.  A joint status report shall be filed fourteen (14) days prior to the status conference, in which the status of the arbitration proceedings shall be explained.

Dated:  August 24, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge