IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMSCO PROPERTIES,LLC; JKR LASER INVESTMENT, LLC; SURFER BEACH, LLC; and TO BE DETERMINED, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>LORAL LANGEMEIER and LIVE OUT LOUD, INC.,<br><br>Defendants. | 2:09-cv-03086-GEB-EFB<br><br>ORDER GRANTING MOTION TO COMPEL ARBITRATION |

Defendants seek an order compelling Plaintiffs, nonsignatories to an arbitration agreement, to arbitrate all claims in this action. The order is sought under 9 U.S.C. § 4 of the Federal Arbitration Act ("FAA"). Defendants argue arbitration should be compelled under the equitable estoppel doctrine, inter alia, because all of Plaintiffs' claims relate to Defendants' alleged investment representations which were made with the understanding that any dispute concerning those representations would be arbitrated. Specifically, Defendants argue "Plaintiffs admit that . . . individuals," "affiliated with each Plaintiff" limited liability company, "attended the Big Table program[, an investment-education

program,] on [each plaintiff] entity's behalf." (Mot. Compel Arbitration 4:6-9, ECF No. 100.) Defendants argue "the individuals through which Plaintiffs attended the Big Table programs and heard the alleged representations regarding investments all signed arbitration agreements that this Court has determined to be valid, enforceable, and broad enough to cover the claims at issue in this litigation." (Id. at 4:20-24.) Defendants argue that at Big Table programs, said members received "educational information . . . that [is] the basis . . . of their claims," concerning which the members agreed in writing to arbitrate any dispute arising from or related to the Big Table programs. (Id. at 7:20-23, 8 n.3.) Defendants argue "Plaintiffs cannot adopt only the parts of this transaction which are beneficial, and then reject the burdens." (Id. at 7:25-26.) Further, Defendants argue Plaintiffs' claims are "inextricably intertwined with the contract that contained the arbitration agreement," because "[a]ll of the claims in this case arise out of representations that were supposedly made during the Big Table programs." (Id. at 8:6-14.)

Plaintiffs counter that their "claims are not intertwined to any degree with the obligations stated in the Big Table agreement," because "[P]laintiffs have not alleged a claim for breach of contract or the negligent performance of any duty to be provided under the agreements, nor even mention[ed the Big Table] agreements in their complaint." (Opp'n Mot. Compel Arbitration 7:10-16, ECF No. 102.) Further, Plaintiffs rejoin with nonresponsive, conclusory, and unsupported equity arguments, which are insufficient to establish that applying equitable estoppel would be inappropriate in this case. Plaintiffs also respond with a waiver of arbitration argument.

However, as explained below, Plaintiffs have not shown that

1  Defendants waived arbitration, and Plaintiffs will be compelled to
2  arbitrate their claims under the equitable estoppel doctrine since
3  Plaintiffs claims are intertwined with the Big Table Program contract
4  which includes an arbitration clause. Therefore, Defendants'
5  alternative argument on which their motion is based need not be
6  addressed.

### I. BACKGROUND

The following assertions and allegations in the complaint concern the motion. See Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings, unless amended, are considered judicial admissions conclusively binding on the party who made them."). Defendants' "on-going business activities in the State of California . . . includ[ed] the Big Table events that Plaintiffs . . . attended, [and Defendants'] website known as DPPonline . . . [which] was used to direct [those] attending Big Table events towards the purchase of investments." (Compl. ¶¶ 16, 19, ECF No. 1.) Each Plaintiff is a limited liability company. (Id. ¶¶ 12–15.) The individual members of each Plaintiff limited liability company attended the "Big Table" events in South Lake Tahoe, California. (Id. ¶ 13 ("JKR is a limited liability company . . . whose individual members . . . attended Big Table No. 24 . . . at the Embassy Suite in South Lake Tahoe California."); id. ¶ 14 ("Surfer Beach is a limited liability company . . . whose individual members . . . attended Big Table No. 24 . . . at the Embassy Suite in South Lake Tahoe California."); id. ¶ 15 ("TBD is a limited liability company . . . whose individual members . . . attended Big Table No. 23 . . . at the Embassy Suite in South Lake Tahoe California."); see id. ¶¶ 10-11 (stating that S. Newell and M. Newell "attended the Big

Table . . . in 2006"); id ¶ 12 (listing "Newell" as Tamsco's "only member and manager since its formation"). At "Big Table" programs in South Lake Tahoe, California in 2006, (id. ¶ 6), Defendants "exhort[ed] and encourag[ed]" Plaintiffs "to invest in various real estate ventures and other investment 'opportunities.'" (Id. ¶ 228 (regarding JKR Laser Investments); accord id. ¶ 202 ("Langemeier exhort[ed] and encourag[ed] Tamsco, and other Big Table participants, to purchase this investment."); id. ¶ 246 ("Langemeier exhort[ed] and encourag[ed] Surfer Beach, and other Big Table participants, to invest in the Cerritos."); id. ¶ 264 ("Langemeier exhort[ed] and encourag[ed] [Plaintiff To Be Determined, LLC,] and other Big Table participants, to purchase the investment offered by Renaissance.").)

Defendants' misrepresentations at and in connection with these programs promoted "high risk and not safe" investments "in pursuit of their own pecuniary interests." (Id. ¶¶ 20, 117.) Plaintiffs sue Defendants for these misrepresentations alleging, inter alia, fraud and breach of fiduciary duties. (Id. ¶¶ 115-144, 189-302.)

Tamsco Properties LLC ("Tamsco") states: "In actual reliance upon Langemeier's representations Tamsco paid $50,000 for an equity interest in Z Harvard Square, $50,000 . . . for a 'unit' of STG [a business], and $125,000 . . . for a limited partnership interest in Renaissance." (Compl. ¶ 193.) JKR Laser Investment LLC ("JKR") states: "In actual reliance upon Langemeier's representations JKR paid $100,000 for a limited property interest in Renaissance." (Id. ¶ 219.) Surfer Beach LLC states: "In actual reliance upon Langemeier's representations Surfer Beach paid $250,000 for what it had been told by Langemeier to be an interest in real property . .

4

. . ." (Id. ¶ 237.) To Be Determined LLC ("TBD") states: "In actual reliance upon Langemeier's representations TBD paid $75,000 for a limited partnership interest in Renaissance." (Id. ¶ 255.)

Defendants also filed a declaration in support of their motion, in which Defendant Loral Langemeier declares: "Everyone who attends a Big Table program signs a Big Table Agreement." (Decl. Loral Langemeier ¶¶ 2-5, ECF No. 100-1.) Defendants attached to Langemeier's declaration Big Table agreements that state, in pertinent part, the following:

> Services
> Client engages [Defendant], and [Defendant] agrees to undertake and provide a program of services commonly known as Loral's Big Table, to the Client . . . .
>                           * * *
> Arbitration
> Any dispute or claim arising or related to this Agreement, its performance, breach, or interpretation (including issues about its validity or enforceability), shall be exclusively . . . resolved by final binding arbitration before the American Arbitration Association (AAA), utilizing its Commercial Arbitration Rules.

(E.g., id. Ex. A, at 5-6, ¶ "Arbitration.")

Further, Defendants attached to the motion special interrogatories and requests for admissions. Attached interrogatory No. 2 asks Plaintiffs to "IDENTIFY each person affiliated with YOU who heard representations at the BIG TABLE as alleged in YOUR COMPLAINT." (Decl. Benoff. Ex. A, at 9, ECF No. 100-3.) Plaintiff Tamsco responded by identifying Steven Newell, (id. at 13), Plaintiff JKR identified Jessica Behrman, (id. Ex. B, at 24), Plaintiff Surfer Beach also identified Jessica Behrman, (id. Ex. C, at 35), and Plaintiff TBD identified Wendy Maynard. (Id. Ex. D, at 47.) Defendants' requests for admissions include the following:

> **Request No. 4**
> Admit that the people identified in YOUR

5

```
                    response to Interrogatory Number 2 attended the BIG
                    TABLE on YOUR BEHALF.
```
**Request No. 5**
    Admit that the people identified in YOUR response to Interrogatory Number 2 signed a BIG TABLE AGREEMENT.

**Request No. 6**
    Admit that the BIG TABLE AGREEMENT(s) signed by the people identified in YOUR response to Interrogatory Number 2 contained an arbitration clause.

(Id. Ex. E, at 53.) Tamsco responded as follows:

**Response to Request No. 4**
    Admit.
**Response to Request No. 5**
    Objection on the grounds of relevancy. Without waiving said objection responding party answers as follows: Admit.
**Response to Request No. 6**
    Objection on the grounds of relevancy. Without waiving said objection responding party answers as follows: Admit.

(Id. at 57.) JKR responded as follows:

**Response to Request No. 4**
    Admit, based on present knowledge. If responding party subsequently obtains information that would lead to a different response it will seek to amend this response.
**Response to Request No. 5**
    Objection on the grounds of relevancy. Without waiving said objection responding party answers as follows: Admit, based on present knowledge. If responding party subsequently obtains information that would lead to a different response it will seek to amend this response.
**Response to Request No. 6**
    Objection on the grounds of relevancy. Without waiving said objection responding party answers as follows: Admit, based on present knowledge. If responding party subsequently obtains information that would lead to a different response it will seek to amend this response.

(Id. Ex. F, at 68–69.) Surfer Beach responded as follows:

**Response to Request No. 4**
    Admit, based on present knowledge. If responding party subsequently obtains information that would lead to a different response it will seek to amend this response.

6

**Response to Request No. 5**
    Objection on the grounds of relevancy. Without waiving said objection responding party answers as follows: Admit, based on present knowledge. If responding party subsequently obtains information that would lead to a different response it will seek to amend this response.

**Response to Request No. 6**
    Objection on the grounds of relevancy. Without waiving said objection responding party answers as follows: Admit, based on present knowledge. If responding party subsequently obtains information that would lead to a different response it will seek to amend this response.

(Id. Ex. G, at 79-80.) Plaintiff TBD responded as follows:

**Response to Request No. 4**
    Admit, based on present knowledge. If responding party subsequently obtains information that would lead to a different response it will seek to amend this response.

**Response to Request No. 5**
    Objection on the grounds of relevancy. Without waiving said objection responding party answers as follows: Admit, based on present knowledge. If responding party subsequently obtains information that would lead to a different response it will seek to amend this response.

**Response to Request No. 6**
    Objection on the grounds of relevancy. Without waiving said objection responding party answers as follows: Admit, based on present knowledge. If responding party subsequently obtains information that would lead to a different response it will seek to amend this response.

(Id. Ex. H, at 90-91.) Further, Plaintiffs produced the formation documents of their respective entities, which show that Steve Newell is a member of Tamsco, (id. Ex. I, at 103), Jessica Behrman is a member of both Surfer Beach and JKR, (id. Ex. J, at 117-18 (regarding JKR); id. Ex. K, at 133 (regarding Surfer Beach)), and Wendy Maynard is a member of TBD. (Id. Ex. L, at 158.)

    Further, Defendants attached to Langemeier's Declaration a copy of the Big Table Agreement signed by a member of each entity Plaintiff who attended the Big Table program in South Lake Tahoe, California. (Id. Ex. A, at 7 (showing Jessica Behrman, member of both

7

1  JKR and Surfer Beach, signed the agreement); id. Ex. E, at 20
2  (showing Steven Newell, member of Tamsco, signed the agreement); id.
3  Ex. I, at 32 (showing Wendy Maynard, member of TBD, signed the
4  agreement).)

## II. DISCUSSION

"A district court's role under the FAA is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Samson v. NAMA Holdings LLC, 637 F.3d 915, 923 (9th Cir. 2010) (internal alterations and quotation marks omitted). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." Id. at 923-24.

Defendants' evidence evincing that a valid arbitration agreement exists between Defendants and an individual member of each entity Plaintiff is uncontroverted. Therefore, the issue is whether Plaintiffs are required to arbitrate their claims under the equitable estoppel doctrine even though they are nonsignatories. Defendants cite both federal and California authority in support of their motion, but do not directly address the issue of which law governs. However, the precise law governing the issue need not be decided, since the conclusion is the same under both federal and California law. See generally Allianz Global Risk U.S. Ins. Co. v. Gen. Elec. Co., 470 F. App'x 652, 653 (9th Cir. 2012) (finding that a district court's decision to apply federal law to "equitably estop[ a party] from refusing to arbitrate" was "not material" since the conclusion would have been the same under state law).

"Equitable estoppel 'precludes a party from claiming the

benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1045 (9th Cir. 2009); accord NORCAL Mut. Ins. Co. v. Newton, 84 Cal. App. 4th 64, 84 (2000) ("No person can be permitted to adopt that part of an entire transaction which is beneficial to him/her, and then reject its burdens."). Further, "[a] nonsignatory can be compelled to arbitrate when a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to arbitrate as well." JSM Tuscany, LLC v. Superior Court, 193 Cal. App. 4th 1222, 1240 (2011). "The equitable estoppel doctrine extends to claims that are dependent upon or inextricably intertwined with the obligations imposed by the contract containing the arbitration clause. As with signatory plaintiffs, when nonsignatory plaintiffs are pursuing such claims, they should be bound by the arbitration clause in the contract which is integral to their claims." Id. at 1241.

The Court is "thus required to analyze the [claims] alleged in the complaint, to determine whether the claims asserted by the plaintiffs are dependent upon, or inextricably intertwined with," the benefits attendant to the Big Table programs concerning which an arbitration obligation exists. Id. at 1242. Plaintiffs sue Defendants for fraud, false statements, breach of fiduciary duties, and unlawful and unfair business practices based on misrepresentations allegedly made in relation to the Big Table programs. (Id. ¶¶ 115–144, 189–302.) All of these claims are based upon alleged obligations related to Defendants' performance under the Big Table agreement, and therefore are subject to the arbitration clauses that an individual member of each Plaintiff entity signed. (Decl. Langemeier Ex. A at 6 (showing

Jessica Behrman, an member of both JKR and Surfer Beach, signed the Big Table agreement); id. Ex. E, at 20 (showing Steven Newell, a member of Tamsco, signed the Big Table agreement); id. Ex. I, at 32 (showing Wendy Maynard, a member of TBD, signed the Big Table agreement).)

Equitable estoppel "prevent[s] a non-signatory from embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 200 (3d Cir. 2001); accord Mundi v. Union Sec. Life Ins., Co., 555 F.3d 1042, 1045 (9th Cir. 2009) (stating "a nonsignatory may be held to an arbitration clause where the nonsignatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." (internal quotation marks and citation omitted)).

Defendants argue Plaintiffs are required to arbitrate their claims because:

> Plaintiffs admittedly received the benefits of the Big Table Agreement. They judicially admit to attending and participating in the Big Table programs. Similarly, Plaintiffs judicially admit that they received the educational information offered at those programs—this is the very same information that Plaintiffs cast as the purported representations regarding investments that are the basis for all of their claims. Plaintiffs cannot adopt only the parts of this transaction which are beneficial, and then reject the burdens. Since the representations allegedly made to Plaintiffs at the Big Table program form the basis of every claim in this litigation, those claims must be arbitrated under the terms of the Big Table Agreement signed by Plaintiffs' [individual members].

(Mot. Compel Arbitration 7:18-8:2 (internal citations ommitted) (citing (Decl. Langemeier, Exs. A-L).) Plaintiffs counter that their

10

"claims are not intertwined to any degree with the obligations stated in the Big Table agreement." (Opp'n Mot. Compel Arbitration 7:10-12.) Defendants reply: "It is the law of this case that Plaintiffs' claims are intertwined with the Big Table Programs and Agreements. Indeed, this Court previously stayed this litigation on two separate occasions because all of the claims arise out of the Big Table." (Reply 6:12-16, ECF No. 104 (citing Prior Orders ECF Nos. 37, 70).)

Here, the language of the Big Table agreement establishes the benefits and, conversely, the detriments or burdens of the agreement. The Big Table agreements state, in pertinent part, the following:

> Services
> Client engages [Defendant], and [Defendant] agrees to undertake and provide a program of services commonly known as Loral's Big Table, to the Client . . . .
>
> * * *
>
> Arbitration
> Any dispute or claim arising or related to this Agreement, its performance, breach, or interpretation (including issues about its validity or enforceability), shall be exclusively . . . resolved by final binding arbitration before the American Arbitration Association (AAA), utilizing its Commercial Arbitration Rules.

(Decl. Langemeier Ex. A, at 5-6.) Thus, the "Clients" under the Big Table agreement agreed to the "burden" or "detriment" of forgoing their rights to litigate by agreeing to arbitrate disputes "related to this Agreement[ and] its performance" in exchange for the "benefit" of the "program of services commonly known as Loral's Big Table," which Defendants agreed to provide. (Id. at 6.)

Further, Plaintiffs admitted in the complaint and in their responses to requests for admissions that they received information "about individual investments," (Compl. ¶¶ 190, 192 (regarding

11

1  Tamsco); id. ¶ 228 (regarding JKR); id. ¶ 256 (regarding Surfer
2  Beach); id. ¶ 264 (regarding TBD), when their individual members
3  "attended the Big Table" events "on [their] behalf." (Decl. Benoff Ex.
4  E, at 53, 57 (regarding Tamsco); id. Ex. F, at 68-67 (regarding JKR);
5  id. Ex. G, at 79-80 (regarding Surfer Beach); id. Ex. H, at 90-91
6  (regarding TBD).) This information was obtained through the "program
7  of services commonly known as Loral's Big Table" which Defendants
8  agreed to provide, and was the sole benefit that the "Clients" who
9  signed this agreement expected to receive. See Deloitte Noraudit A/S
10 v. Deloitte Haskins & Sells, U.S., 9 F.3d 1060, 1064 (2d Cir. 1993)
11 (holding that if a nonsignatory "knowingly accepted the benefits"
12 which were the same as those "benefits secured for all" signatories,
13 the nonsignatory is "estopped from denying its obligation to
14 arbitrate"). The entity Plaintiffs were aware of this agreement and
15 its obligation to arbitrate disputes related to performance thereunder
16 since their individual members signed the agreements. (Decl.
17 Langemeier Ex. A at 6 (showing Jessica Behrman, member of both JKR and
18 Surfer Beach, signed the agreement); id. Ex. E, at 20 (showing Steven
19 Newell, member of Tamsco, signed the agreement); id. Ex. I, at 32
20 (showing Wendy Maynard, member of TBD, signed the agreement).)
21 Plaintiffs assert in their complaint that: "In actual reliance" on
22 these "representations," Plaintiffs used the information and made
23 substantial investments. (Id. ¶ 193; accord id. ¶¶ 219, 237, 255.)
24        Therefore, by virtually attending the Big Table programs,
25 using the Defendants' investment information, and asserting claims
26 founded on representations made at the Big Table programs which are
27 related to Defendants' performance under the Big Table agreement,
28 Plaintiffs "embrac[ed]" the Big Table Agreement and now "turn [their]

back[s]" to its arbitration clause. E.I. DuPont de Nemours & Co., 269 F.3d at 200. "To allow [P]laintiff[s] to claim the benefit of the [Big Table Agreements] and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act." Int'l Paper Co. v. Schwabediseen Maschinen & Analgen GMBH, 206 F.3d 411, 418 (4th Cir. 2000). Defendants' uncontroverted evidence demonstrates that "it would be . . . inequitable to permit" Plaintiffs to use the investment information upon which this suit is grounded, "and at the same time . . . avoid arbitration of claims clearly within the ambit of the arbitration clause." Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp., 659 F.2d 836, 838-39 (7th Cir. 1981).

However, Plaintiffs argue that "Defendants have waived their right to arbitrate by waiting three years after their initial motions and less than a year before trial, as well as seeking the court's determination on issues going to the merits of this case." (Opp'n Mot. Compel Arbitration 1:25-27, ECF No. 102.) Plaintiffs contend this delay has prejudiced Plaintiffs in part because "[P]laintiffs have yet been able to conduct discovery in a meaningful way, and the discovery cut-off is approaching." (Id. at 10:25-11:4.) Defendants reply discussing, inter alia, the procedural history of this action, which includes stays imposed while previous parties in this action were ordered to arbitrate claims, and argue that Defendants' discovery requests were designed to "gather[] the information necessary to file a motion to compel arbitration." (Reply 10:22-23, ECF No. 10.)

Although "it is certainly possible to waive contractual rights to arbitration, such waivers are not favored." Letizia v. Prudential Bache Sec., Inc., 802 F.2d 1185, 1187 (9th Cir. 1986). "A

13

party seeking to prove such a waiver must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." Id. (quoting Fisher v. A.G. Becker Paribas, Inc., 791 F.2d 691, 694 (9th Cir. 1986)) (internal quotation marks omitted). In the arbitration context, "[w]aiver . . . is distinct from forfeiture . . . . [W]aiver is the intentional relinquishment or abandonment of a known right, whereas forfeiture is the failure to make the timely assertion of that right." United States v. Park Place Assocs., Ltd., 563 F.3d 907, 935 n.10 (9th Cir. 2009) (internal quotation marks and alterations omitted) (quoting United States v. Jacobo Castillo, 496 F.3d 947, 952 n.1 (9th Cir. 2007) (en banc)). Further, "waiver does not occur by mere participation in litigation if there has been no judicial litigation of the merits of arbitrable issues. . . . Prejudice typically is found only where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." Saint Agnes Med. Ctr. v. PacifiCare of Cal., 31 Cal. 4th 1187, 1203–04 (2003). "Because waiver of the right to arbitration is disfavored, any party arguing waiver of arbitration bears a heavy burden of proof." Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986) (internal quotation marks omitted).

Plaintiffs have not shown that Defendants' litigation actions in this case have been inconsistent with Defendants' assertion of their arbitration rights, in light of the procedural history in this action showing that Defendants have asserted their rights to arbitration. Further, since Defendants' discovery requests were

focused on identifying the individuals who attended the Big Table Programs on behalf of each Plaintiff in order to support their motion to compel arbitration, these acts were consistent with their rights to arbitrate. Nor have Plaintiffs shown that they would be prejudiced in any measurable manner by being compelled to arbitrate their claims, particularly since "there has been no judicial [resolution] of the merits of arbitrable issues." Saint Agnes Med. Ctr., 31 Cal. 4th at 1203 (reversing trial court for failing to stay proceeding and order arbitration, reasoning that even extensive litigation over venue does not waive arbitration rights); see also Fisher, 791 F.2d at 697 (holding that even extensive discovery over three and a half years is insufficient prejudice for a waiver of arbitration). Therefore, Plaintiffs have failed to sustain their burden of showing that Defendants waived their right to arbitrate.

### III. CONCLUSION

For the stated reasons, Defendants' Motion to Compel Arbitration (ECF No. 100) is granted. Further, this action is dismissed without prejudice in light of the requirement that Plaintiffs arbitrate their claims. Sparling v. Hoffman Constr., Co., 864 F.2d 635, 638 (9th Cir. 1988) (stating "district court acted within its discretion when it dismissed . . . claims [since]. . . the arbitration clause was broad enough to bar all of the plaintiff's claims since it required [plaintiff] to submit all claims to arbitration."). Therefore, this action shall be closed.

1/18/13

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge